IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GREGORY D MORRIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00018-JRG |
| | § | |
| KANSAS CITY RAILWAY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(2) (the "Motion") filed by Defendant Kansas City Southern Railway Company ("KCSR" or "Defendant"). (Dkt. No. 6). In the Motion, KCSR seeks dismissal of the above-captioned case pursuant to Federal Rule of Civil Procedure 12(b)(2) because exercise of personal jurisdiction over KCSR does not comport with the Due Process Clause of the Fourteenth Amendment. (*Id.* at 1). Having considered the Motion, the Court finds that it should be and hereby is **GRANTED**.

### I.  BACKGROUND

Plaintiff's Complaint details that "[t]his cause of action grows out of an incident that occurred on or about August 28, 2023." (Dkt. No. 1, ¶ 3). Plaintiff was employed by Defendant KCSR "as a Bridge Mechanic/Welder on B&B Gang 680, a mobile gang that works primarily in Louisiana, Arkansas, and Oklahoma." (*Id.*, ¶ 6). On the day in question, Plaintiff was injured while working "on the KCS main track near Wilton, Arkansas" when a sliding shim struck him in the chest and knocked him to the ground. (*Id.*).

## II.     LEGAL STANDARD

A plaintiff has the burden of establishing jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977))) (internal marks omitted). The Fifth Circuit applies a three-step analysis to determine whether specific jurisdiction is present:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

While Defendant KCSR has contacts with Texas, the critical issue in this case is whether Plaintiff has shown that his cause of action arises out of or results from KCSR's contacts with Texas. "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (internal marks omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citing *Goodyear*, 564 U.S. at 919); *Walden*, 571

2

U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.") "The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *McFadin*, 587 F.3d at 759 (quoting *Electrosource, Inc., v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir.1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985))) (internal marks omitted).

### III.   ANALYSIS

**A. Plaintiff has failed to show that his cause of action arises out of or results from KCSR's contacts with Texas.**

Defendant KCSR contends that neither general personal jurisdiction nor specific personal jurisdiction exists over it. (Dkt. No. 6). With regard to general personal jurisdiction, KCSR argues that its "state of incorporation and headquarters are in Missouri," and that "[a]lthough it has rail operations in Texas and employs Texans, Texas is not its home or essentially its home." (*Id.* at 6–7). As such, KCSR concludes that "Texas cannot exercise general jurisdiction" over it. (*Id.*). With regard to specific personal jurisdiction, KCSR argues that it "does not exist because Plaintiff's FELA claim did not arise from KCSR's contact with Texas." (*Id.* at 8). KCSR notes that "Plaintiff claims to have suffered an injury from a fall while working for KCSR in Arkansas," and that "Plaintiff's Original Complaint does not allege any act or omission of KCSR that occurred in Texas that gave rise to his claim." (*Id.*). KCSR concedes that the remaining steps of the specific personal jurisdiction test are satisfied.

In response, Plaintiff argues that this Court has specific jurisdiction over KCSR in this case. (Dkt. No 20 at 3–7). Plaintiff devotes multiple pages of its Response to the elements of specific personal jurisdiction conceded by KCSR. *See* (*id.* at 4–6 (establishing that KCSR has minimum

3

contacts with Texas and arguing that exercise of jurisdiction would be fair and reasonable)). With respect to the disputed element, Plaintiff argues that "[w]hile [his] injuries occurred in Arkansas, the very bridge that [he] was working on is part of the same track that enters Texas." (*Id.* at 7). Indeed, Plaintiff argues, "[b]ut for the construction and usage of KCSR's track going through Texas, [Plaintiff] would not have been replacing the shim and would not have been injured." (*Id.*). As such, Plaintiff contends that "KCSR's suit-related conduct was substantially connected to Texas, with KCSR's contacts with Texas arguably being even a but-for cause of [his] injuries." (*Id.*).

In reply, KCSR first notes that "Plaintiff's response concedes by omission the lack of general personal jurisdiction over KCSR in Texas." (Dkt. No. 21 at 2). With respect to specific personal jurisdiction, KCSR argues that Plaintiff's claimed injury occurred on a bridge in Arkansas, and that "[t]he fact that the rail lines are connected to rail in Texas is merely fortuitous." (*Id.* at 5 (citing *Burger King Corp.*, 471 U.S. 462 (stating that the basis for specific jurisdiction may not be grounded on "random, fortuitous or attenuated contacts")). KCSR notes that "[i]f Plaintiff's argument were accepted and its logic followed, KCSR could be subject to jurisdiction in Texas for any incident that occurred anywhere on its rail lines," because, "[l]ike all rail systems, KCSR's rail system is continuous." (*Id.* at 6).

As an initial matter, the Court finds that Plaintiff does not materially contest KCSR's position that no general personal jurisdiction exists over KCSR in Texas. While Plaintiff makes vague assertions within its specific jurisdiction argument that ring of general jurisdiction—namely: "Even if the Court were to decide that the injuries and conduct were not sufficiently related, KCSR's contacts with the forum state are arguably sufficient to render this analysis unnecessary and satisfy due process [because] KCSR pays taxes in Texas, is registered in Texas, and has

4

extensive facilities and operations in Texas" (Dkt. No. 20 at 7)—such arguments, even if considered as attempting to support the exercise of general personal jurisdiction, fail.

Plaintiff has failed to make a *prima facie* showing that KCSR, an entity incorporated and headquartered in Missouri, has contacts "so substantial and of such a nature as to render the corporation at home in [Texas]." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017) (noting that only an "exceptional case" justifies finding a corporation at home in a place other than that corporation's place of incorporation or its principal place of business). Indeed, the Fifth Circuit has noted that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). Plaintiff has failed to properly even raise the issue, let alone make this "incredibly difficult" showing. That KCSR has facilities and operations in Texas and pays taxes in the State does not in this case justify the exercise of general jurisdiction. Likewise, and as discussed below (*see infra* § III.B), the fact that KCSR has registered to do business in Texas does not subject KCSR to jurisdiction within the State.

Finding that the exercise of general jurisdiction over KCSR would not be proper, the Court turns to specific jurisdiction where the only dispute between the parties is whether Plaintiff's cause of action "arises out of or results from the defendant's forum-related contacts." *McFadin*, 587 F.3d at 759. The Court finds that Plaintiff's cause of action does not arise out of or result from KCSR's contacts with Texas. Plaintiff's cause of action revolves around allegations of negligence by KCSR in relation to work done in Wilton, Arkansas. *See* (Dkt. No. 1). Plaintiff has failed to show how any of KCSR's suit-related conduct creates a substantial connection with Texas. Those purportedly negligent acts—namely, that KCSR: (a) failed to provide a reasonably safe place to work, (b) failed to provide Plaintiff with reasonably safe tools and equipment, (c) required Plaintiff to complete

tasks without an adequate and proper briefing, training, and information, (d) assigned Plaintiff to work in a situation or condition which it knew was likely to cause Plaintiff's injury, and (e) allowed unsafe practices to become the standard practice (*see* Dkt. No. 1, ¶ 7)—all undisputably occurred in Arkansas, not Texas.

The Court is unpersuaded by Plaintiff's argument that KCSR's suit-related conduct in Arkansas was "substantially connected to Texas" because "the very bridge that [Plaintiff] was working on is part of the same track that enters Texas." (Dkt. No. 20 at 7). The natural consequence of such reasoning would mean that KCSR could be subject to suit in any jurisdiction in which it has run tracks. Such a result cannot be, as it would virtually dispose of the requirements for establishing specific personal jurisdiction. Indeed, such "random, fortuitous, [and] attenuated contacts" are precisely the type of links that the Fifth Circuit has instructed are insufficient to establish personal jurisdiction. *McFadin*, 587 F.3d at 759 ("[D]efendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . .") (internal quotations omitted).

The Court further notes that the present case is analogous to a recent decision from the Northern District Illinois: *McClellan v. CSX Transportation, Inc.* In *McClellan*, the plaintiff alleged that the defendant's negligent acts that caused a train collision in Indiana arose from or related to defendant's Illinois activities because the train at issue originated from Illinois. *McClellan v. CSX Transportation, Inc.*, No. 18-CV-4183, 2018 WL 6192192, at *4 (N.D. Ill. Nov. 28, 2018). The Court in *McClellan* found that "plaintiff fail[ed] to explain how such a fact connects Illinois to the allegations asserted against [defendant]," and that "[p]laintiff likewise fail[ed] to show how the acts or omissions alleged in the complaint arise from, or relate to, [defendant]'s activities in Illinois." *Id.* (holding that "plaintiff cannot make a *prima facie* showing of specific jurisdiction").

Like *McClellan*, Plaintiff in this case was injured while working in a different state from that in which he asserts personal jurisdiction is proper over the defendant. Here, Plaintiff attempts to link KCSR's purportedly negligent actions in Arkansas to the state of Texas through a set of continuous railroad tracks. Like the location of origin for the train in *McClellan*, the fact that KCSR's train tracks ultimately run into Texas—and many other states—does nothing to connect Texas to Plaintiff's allegations in this case. As such, Plaintiff has failed to make a *prima facie* showing that KCSR's purportedly negligent acts in Arkansas arise out of or result from KCSR's activities in Texas.

### B.  KCSR did not impliedly consent to jurisdiction in Texas by registering to do business in the State.

Plaintiff contends—separately from the rest of its specific personal jurisdiction argument—that based on the Supreme Court's recent decision in *Mallory v. Norfolk Sothern Railway Co.*, "KCSR is a non-resident which conducts business in Texas and, in doing so, has impliedly consented to personal jurisdiction in Texas." (Dkt. No. 20 at 4 (citing 600 U.S. 122 (2023))).[1] Specifically, Plaintiff contends that "Texas is one of the states that requires corporations to consent to personal jurisdiction in order to register to do business in the state," because "*§ 17.042* of Texas' long-arm statute provides that a non-resident conducting business in Texas is subject to personal jurisdiction being exercised by Texas." (*Id.* (citing TEX. CIV. PRAC. & REM. CODE § 17.042)).

In reply, KCSR argues that the Supreme Court's decision in *Mallory* was limited to the specific Pennsylvania statute before it and that the Court explained it need not "speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." (Dkt. No.

---

[1] While Plaintiff includes this argument under the section titled, "This Court has Specific Jurisdiction over KCSR in this Case," the Court notes that this argument is in essence an argument for general, not specific, jurisdiction over KCSR.

7

21 at 3 (quoting *Mallory*, 600 U.S. at 135–36)). KCSR notes that Section 17.042 (identified by Plaintiff as the relevant provision) "does not say anything about consent to jurisdiction or registration to do business in Texas." (*Id.* at 4).

The Court agrees with KCSR that *Mallory*'s conclusion of implied consent to jurisdiction does not extend to the Texas long-arm statute. In *Mallory*, the Supreme Court was explicit that its holding was limited to the specific Pennsylvania law at issue and the facts before it. *See Mallory*, 600 U.S. at 135–36 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit. It is enough to acknowledge that the state law and facts before us fall squarely within *Pennsylvania Fire*'s rule."). In *Mallory*, the "Pennsylvania law [was] explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Id.* at 134 (quoting 42 PA. CONS. STAT. § 5301(a)(2)(i)).

Here, Section 17.042 of the Texas Civil Practice and Remedies Code—identified by Plaintiff as the relevant provision and excerpted below—says nothing explicitly, or implicitly, about consent to jurisdiction being a requisite for registering to do business in the state:

```
    Sec. 17.042.  ACTS CONSTITUTING BUSINESS IN THIS STATE.  In addition to other acts
that may constitute doing business, a nonresident does business in this state if the
nonresident:
        (1)  contracts by mail or otherwise with a Texas resident and either party is
to perform the contract in whole or in part in this state;
        (2)  commits a tort in whole or in part in this state;  or
        (3)  recruits Texas residents, directly or through an intermediary located in
this state, for employment inside or outside this state.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.
```

Section 17.042 is clearly distinguishable from the Pennsylvania law at issue in *Mallory*, which required explicit consent to the exercise of general personal jurisdiction over the out-of-state corporation registering to do business in that state. The Court finds no requirement of consent

to personal jurisdiction (either explicit or implicit) in the Texas statute. Indeed, a sister court in this circuit has already analyzed this issue and reached the same conclusion. *See AssetWorks USA, Inc. v. Battelle Mem'l Inst.*, No. 1:23-CV-731-RP, 2023 WL 7106878, at *2 (W.D. Tex. Oct. 23, 2023) ("[T]he holding of *Mallory* is narrow, and given that the Texas statute concerning registration of nonresident corporations neither mentions general jurisdiction nor mirrors the structure of the Pennsylvania statute, this Court sees no need to abandon established Fifth Circuit precedent."). As such, the Court rejects Plaintiff's argument that KCSR impliedly consented to personal jurisdiction in Texas by registering to do business in the State.

### C. Plaintiff has failed to show that transfer would be in the interest of justice.

Plaintiff requests that, "[i]n the event that the Court determines it does not have personal jurisdiction over KCSR, . . . the Court transfer this case to the Texarkana Division of the Western District of Arkansas (the location where the injury occurred)." (Dkt. No. 20 at 8). Plaintiff contends that the interest of justice supports such a transfer as opposed to dismissal because dismissal "would penalize an individual who has already suffered enough by obeying orders in performing his duties for KCSR" and because "a dismissal would lead to this suit being filed elsewhere." (*Id.*).

In reply, KCSR concedes that "[s]ince the incident occurred [in the Texarkana Division of the United States District Court for the Western District of Arkansas], jurisdiction and venue would be appropriate in that court," but opposes the transfer because "it is not in the interest of justice to transfer in this instance." (Dkt. No. 21 at 8). Specifically, KCSR notes that "Plaintiff filed in this forum and compelled defendant to pursue its challenge based on personal jurisdiction, knowing that KCSR is a Missouri corporation with headquarters in Missouri and knowing this incident occurred in Arkansas, not Texas." (*Id.*). KCSR notes that Plaintiff "can refile anytime until August

9

28, 2026" because "[t]he Federal Employers' Liability Act under which plaintiff has sued has a three-year statute of limitations." (*Id.* at 8, n.4 (citing 45 U.S.C. § 56)).

The Court finds that the interest of justice does not warrant transfer in this case. Plaintiff will not be unfairly prejudiced by dismissal of this suit, as he is free to refile in an appropriate jurisdiction anytime until August 28, 2026.[2]

### IV. CONCLUSION

Having considered the Motion, and for the reasons stated herein, the Court finds that it should be and hereby is **GRANTED**. Accordingly, it is **ORDERED** that Plaintiff's claims in the above-captioned case are **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling in an appropriate forum. All pending requests for relief in the above-captioned case not explicitly granted herein are **DENIED AS MOOT**. The Clerk of Court is directed to **CLOSE** the above-captioned case as no parties or claims remain.

**So ORDERED and SIGNED this 8th day of July, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[2] August 28, 2026 is the date by which Plaintiff must refile his claim due to the FELA's three-year statute of limitations. *See* (Dkt. No. 1, ¶ 3 ("This cause of action grows out of an incident that occurred on or about August 28, 2023.")); 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.").